# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ROBERT D. COCHRAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 11-0440-CV-W-HFS-P |
| ) | |
| DAVE DORMIRE , ) | |
| ) | |
| Respondent. | |

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Jefferson City Correctional Center in Jefferson City, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1998 convictions and sentences for second-degree murder, armed criminal action, and first-degree burglary which were entered in the Circuit Court of Jackson County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibit F), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit M). Petitioner raises five (5) grounds for relief. Respondent contends that Grounds 2 and 5 and a parts of Grounds 3 and 4 are procedurally defaulted, and that Ground 1 and the remaining claim in Grounds 3 and 4 are without merit.

## FACTUAL BACKGROUND

In affirming the motion court's denial of petitioner's 29.15 motion, the Missouri Court of Appeals, Western District, set forth the following facts:

> Mr. Cochran met with Mr. Ronsell Williams, a friend, and Mr. Wornel Mitchell, Mr. William's cousin. Mr. Cochran showed Mr. Williams that he had a

gun, and Mr. Mitchell and Mr. Williams informed Mr. Cochran that they also had a gun. The three men decided to burglarize an unoccupied three-story home. They forcibly entered through the back door and went upstairs. As they were stealing items on different levels of the house, Mr. Williams told the other men that he heard someone downstairs. The three men then went downstairs. Mr. Cochran went first and Mr. Williams and Mr. Mitchell followed behind him. At the bottom of the stairs, Mr. Cochran began firing and Mr. Mitchell and Mr. Williams ran out of the front door. They ran from the house together but separated to elude a car that immediately began to chase them.

Subsequently, police arrived at the scene around 7:00 p.m. and found the resident of the home fatally wounded; it appeared to be a fresh crime. Mr. Cochran was not found at the scene. Two clergymen in the area escorted Mr. Williams to the scene after he told them a man with a gun was chasing him. The two clergymen informed Sergeant Jay Pruetting that a man with a gun was chasing a young man. The police officers then took Mr. Williams to the police station to investigate. Sergeant Pruetting interviewed him. Mr. Williams initially denied any involvement with the crime scene but later confessed that he, Mr. Mitchell, and Mr. Cochran were burglarizing the home when the resident returned and that Mr. Cochran shot the resident as Mr. Williams and Mr. Mitchell were leaving. After hearing Mr. Williams was in custody, Mr. Mitchell surrendered to the police the following day and identified Mr. Cochran as the shooter.

After being arrested and signing a Miranda waiver, Mr. Cochran admitted that on the day of the murder he met with Mr. Williams, who was accompanied by a man that he did not know. He claimed that they socialized but that he parted ways with them to visit another friend, Mr. James Green. After visiting Mr. Green, he then visited his girlfriend, Ms. Jackie Reed, at her mother's house. He and his girlfriend later went to a motel around 10:00 p.m. and spent the night in a room, which his friend "Malcom" had rented for him. Subsequently, Mr. Cochran, Mr. Williams, and Mr. Mitchell were charged as codefendants with first-degree burglary, second-degree murder, and armed criminal action (ACA).

During the jury trial, Mr. Williams and Mr. Mitchell testified that Mr. Cochran participated in the burglary and shot at the resident of the home. During cross-examination of both of these witnesses, trial counsel adduced that they had pleaded guilty to lesser charges for their involvement and were eligible for probation. Defense counsel attempted to adduce from Mr. Mitchell that he had used drugs before the burglary, but the trial court sustained the State's objection. Sergeant Pruetting testified concerning the demeanors of Mr. Williams, Mr. Mitchell, and Mr. Cochran and their denials and admissions during the interviews. Finally, he testified that he could not verify Mr. Chochran's story; the hotel's staff could not recall Mr. Cochran's or Ms. Reed's presence at the hotel, and no documents were found reflecting the renting of a room in "Malcom's," Mr. Cochran's, or Ms. Reed's

2

names.

> Defense counsel called six witnesses, but did not call Mr. Green, the friend Mr. Cochran claimed to have visited before going to the hotel. Ms. Reed and her mother testified in support of Mr. Cochran's alibi theory. Mr. Cochran did not testify. At the conclusion of the evidence, the jury convicted Mr. Cochran of second-degree murder, first-degree burglary, and ACA. He was sentenced to concurrent sentences of life imprisonment for murder, fifteen years imprisonment for first-degree burglary, and fifteen years for ACA.

Respondent's Exhibit M, pp. 1-3.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND ONE

In Ground One, petitioner asserts a claim for ineffective assistance of trial counsel in that counsel failed to object to improper hearsay testimony and improper bolstering testimony. Doc. No. 1, pp. 6, 14-21. The Missouri Court of Appeals, Western District, denied Ground One by stating:

> To prevail on a claim of ineffective assistance of trial counsel, Mr. Cochran had to show: (1) that counsel's performance fell below the reasonably competent level; and

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

(2) that counsel's deficient performance prejudiced him. Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006). Prejudice is shown when there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. Bucklew v. State, 38 S.W.3d 395, 397 (Mo. banc 2001). We presume the trial counsel's performance was reasonable even if his or her trial strategies were ill-fated in hindsight. Anderson, 196 S.W.3d at 33.

In his second point, Mr. Cochran specifically argues that trial counsel was ineffective for failure to object to improper bolstering of Mr. Mitchell's testimony by Sergeant Pruetting and that he was prejudiced because the bolstering strengthened Mr. Mitchell's credibility. "Improper bolstering occurs when an out-of-court statement of a witness is offered solely to duplicate or corroborate trial testimony." State v. Holmquest, 243 S.W.3d 444, 449 (Mo. App. W.D. 2007) (citation and internal quotation marks omitted). However, use of a prior consistent statement to rehabilitate a witness's credibility does not constitute improper bolstering. State v. Davis, 186 S.W.3d 367, 375 (Mo. App. W.D. 2005). Out-of-court statements (prior consistent statements) may be used for rehabilitation when opposing counsel has explicitly or implicitly questioned the veracity of the witness's testimony. Holmquest, 243 S.W.3d at 449-50. Only prior consistent statements made before the impeaching incident are admissible because only those statements rebut the inference of fabricated testimony. See Davis, 186 S.W.3d at 375.

Mr. Mitchell testified that he gave a statement after he surrendered to the police. He told them the location of a stolen item and of the gun that he and Mr. Williams were carrying. He also testified that he had pleaded guilty to voluntary manslaughter and first-degree burglary and was facing a maximum of twenty years imprisonment. On cross-examination, trial counsel adduced that Mr. Mitchell had been charged with second-degree murder, ACA, and first-degree burglary and was a candidate for probation. Subsequently, Sergeant Pruetting testified that Mr. Mitchell had a calm demeanor when he interviewed him and that Mr. Mitchell's statements concerning evidence to incriminate him and Mr. Williams were verified. Specifically, Sergeant Pruetting stated, "Everything he said was exactly where he said it was."

First, there was no bolstering because Sergeant Pruetting's statements did not constitute out-of-court statements, but rather his observations of Mr. Mitchell's accuracy. See State v. Walters, 241 S.W.3d 435, 439 (Mo. App. W.D. 2007) (indicating a witness's verifying of the accuracy of the matter in another's witness's statement does not constitute an opinion as to the statement's truthfulness). Second, even if Sergeant Pruetting's statements were bolstering, it was not improper to bolster Mr. Mitchell's credibility because trial counsel attacked Mr. Mitchell's credibility. By informing the jury that Mr. Mitchell pleaded guilty to reduced charges and could possibly obtain probation, trial counsel implied that Mr. Mitchell fabricated testimony for leniency. Sergeant Pruetting's testimony rehabilitated Mr.

4

Mitchell's credibility. Thus, the motion court did not err in finding that trial counsel was effective despite her failing to object to this testimony. Mr. Cochran's second point is denied.

In his third point, Mr. Cochran argues that his trial counsel was ineffective because she failed to object to improper hearsay testimony. Mr. Cochran argues that, but for trial counsel's failure to object, there is a reasonable probability that the outcome of the trial would have been different because the improper hearsay testimony discredited Mr. Cochran and Ms. Reed. The motion court found that even if an objection would have been meritorious, Mr. Cochran did not show that the failure to object was not reasonable trial strategy or that he was prejudiced such that he was substantially deprived of a fair trial.

Hearsay testimony is out-of-court statements used as proof of the matter asserted. State v. Douglas, 131 S.W.3d 818, 823 (Mo. App. W.D. 2004). Generally, hearsay is inadmissible unless an exception applies. Id. Out-of-court statements offered not for the truth of the asserted matter but to explain subsequent police conduct are admissible. See id. At 824. Statements that go beyond "what is necessary to explain subsequent police conduct" may constitute impermissible hearsay. Id.

Sergeant Pruetting testified that the Bluebird Motel's staff could not recall Mr. Cochran's or Ms. Reed's presence at the motel and that other hotels in the area they checked did not have records showing a room rented in "Malcom's," Mr. Cochran's, or Ms. Reed's names. The statements were made in response to the State's question as to whether Sergeant Pruetting investigated Mr. Cochran's story that he stayed overnight at a motel on the day of the murder. Because these statements were offered for the truth of the matter asserted and not to explain subsequent police conduct, the motion court properly found that an objection to these statements would have been meritorious.

"Failing to object to objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accused's right to a fair trial." Helmig v. State, 42 S.W.3d 658, 678 (Mo. App. E.D. 2001). Thus, we must determine if the motion court clearly erred in finding that the hearsay was not prejudicial.

Mr. Cochran claims counsel's failure to object to this testimony was prejudicial because the case turned on credibility and the admitted hearsay showed "that Mr. Cochran was lying about the motel," allowing the State to imply, "that the rest of his statement was [also] a lie." The State claims that Mr. Cochran was not prejudiced by admission of the hearsay because Ms. Reed's testimony established that Mr. Cochran may have been mistaken about the hotel rather than lying. The State further claims that although Sergeant Pruetting testified that he checked other

5

motels to make sure Mr. Cochran was not mistaken about where he stayed, this testimony did not refute the inference from Ms. Reed's testimony that Mr. Cochran was only mistaken. The State asserts Sergeant Pruetting did not testify that the authorities checked all the motels in the general area; the authorities did not know in whose name the room was registered, and only "Malcom," as the renter, would have interacted with staff, such that the hotels' staffs' inability to verify Mr. Cochran's and Ms. Reed's presence at either of those hotels after being shown photographs was meaningless. In short, the State argues that Sergeant Pruetting's testimony was "effectively countered by [defense] counsel's cross-examination."

The motion court concluded that Mr. Cochran was not prejudiced because he presented evidence that he had spent the night at a hotel with his girlfriend and because the hearsay did not "specifically address the time of the charged burglary and murder." The motion court specifically stated that Ms. Reed testified that "she and the defendant didn't go to the motel until 10:00 p.m." Because the issue concerned a collateral matter and did not necessarily refute Ms. Reed's testimony, there is no reasonable probability that the outcome of the trial would have been different. Thus, the motion court did not clearly err. Mr. Cochran's third point is denied.

Respondent's Exhibit M, pp. 6-10.

In order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Washington v. Strickland, 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000)."A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland. 466 U.S. at 694.

To satisfy the prejudice prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

6

The Missouri Court of Appeals, Western District, found that (1) there was no bolstering because Sergeant Pruetting's statements did not constitute out-of-court statements, (2) even if Sergeant Pruetting's statements were bolstering, it was not improper to bolster Mr. Mitchell's credibility after trial counsel attacked Mr. Mitchell's credibility, so trial counsel could not be ineffective for failing to make an objection that was likely to fail, and (3) there is no reasonable probability that the outcome of the trial would have been different if petitioner's trial counsel had objected to Sergeant Pruetting's hearsay statements. Respondent's Exhibit M, pp. 7-10. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or a misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground One, will be denied.

## **GROUND TWO**

In Ground Two, petitioner asserts a claim for ineffective assistance of appellate counsel in that counsel failed to raise on direct appeal that bolstering testimony was improperly admitted in his trial by the State prosecutor. Doc. No. 1, p. 6. Respondent grouped petitioner's claim of ineffective assistance of trial counsel for failure to object to bolstering testimony into Ground Two and argued that petitioner procedurally defaulted Ground Two as to petitioner's claim of ineffective assistance of appellate counsel because petitioner failed to bring an ineffective assistance of appellate counsel claim as to improper bolstering testimony on appeal from the denial of his Rule 29.15 motion. Doc. No. 9, pp. 19-21. In response, petitioner contradicts the statement of his grounds for relief in his petition (Doc. No. 1, p. 6) and states that "petitioner never claimed that his appellate counsel was ineffective on this particular claim" and that he only meant to advance a claim of ineffective assistance of trial counsel concerning improper bolstering evidence, which he did in Ground One.

7

Doc. No. 13, p. 8; Doc. No. 1, p. 6. This Court denied plaintiff's claim of ineffective assistance of trial counsel for failing to object to improper bolstering evidence in Ground One.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id. Petitioner procedurally defaulted Grounds Two by failing to include the claims in his post-conviction appeal. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997)(recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998).

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Because petitioner has not made such a showing and because now petitioner states that he never claimed that his appellate counsel was ineffective as to improper bolstering evidence, Ground Two will be denied.

## GROUND THREE

In Ground Three, petitioner asserts a claim for ineffective assistance of trial counsel in that counsel failed to investigate and call two alibi witnesses, James Green and Malcolm Jackson. Doc. No. 1, pp. 6, 21-22. Respondent argues that petitioner procedurally defaulted Ground Three as to counsel being ineffective for failing to call Malcolm Jackson. Doc. No. 9, p. 24. In response, petitioner states that he properly exhausted his claim in relation to James Green and that "the

8

primary focus of this issue is on James Green." Doc. No. 13, pp. 11-12.

Petitioner procedurally defaulted Ground Three as to Malcolm Jackson by failing to include the claim in his post-conviction appeal. Sweet, 125 F.3d at 1149 (failure to present claim at any stage of post-conviction proceeding is a procedural default). For this Court to review a procedurally defaulted claim, petitioner must demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Because petitioner has not made such a showing, and because now petitioner claims that he intends James Green to be the primary focus of Ground Three, Ground Three will be denied as to petitioner's claim that counsel was ineffective for failing to call Malcolm Jackson as an alibi witness.

The Missouri Court of Appeals, Western District, denied Ground Three as to petitioner's claim that counsel was ineffective for failing to call James Green as an alibi witness by stating:

> In his fourth point, Mr. Cochran argues that but for the trial counsel's deficient performance, in failing to investigate or call a witness to support the defendant's alibi, there exists a reasonable probability that the outcome of the trial would have been different because Mr. Cochran's alibi defense would have been strengthened. The motion court determined that Mr. Cochran did not prove trial counsel failed to investigate Mr. Green as a witness and that the decision not to call Mr. Green was not trial strategy.
>
> Trial counsel's decision not to call a witness is reasonable trial strategy where a witness's testimony would not have provided "unqualified support to [a] defendant's alibi." State v. Boyd, 842 S.W.2d 899, 906 (Mo. App. S.D. 1992). Although trial counsel was unable to recall most of the facts of the case, due to the passing of ten years since the trial, a presumption that trial counsel was effective still exists. See id. at 905. Mr. Cochran had the burden to overcome the presumption that trial counsel's failure to call Mr. Green was unreasonable trial strategy. See id.
>
> Mr. Green testified via deposition that he would have testified that on the day of the murder, he was with Mr. Cochran during the early evening for a "couple of hours." He could not provide the timeframe for Mr. Cochran's visit with him. Time was crucial to support Cochran's alibi. Thus, Mr. Green's testimony would not have

9

provided unqualified support for the alibi defense. Ms. Reed's and her mother's testimony placed Mr. Cochran at or near their residence on or around the time of the murder. In light of their testimony, trial counsel's performance was not deficient in failing to call Mr. Green. Moreover, Ms. Reed and her mother had no prior conviction whereas Mr. Green had a conviction for drug possession and would have been impeached. The motion court did not clearly err in its finding and conclusions. Mr. Cochran's fourth point is denied.

Respondent's Exhibit M, pp. 10-11.

The Missouri Court of Appeals, Western District, found that petitioner's trial counsel made a reasonable strategic decision to not call James Green as an alibi witness because he would have been impeached, that his testimony was not likely to be specific as to the time, and that the testimonies of Ms. Reed and her mother already provided petitioner alibi testimony as to the time of the murder. Such strategic decisions are virtually unchallengeable, especially under 28 U.S.C. § 2254. Strickland, 466 U.S. at 690-91; Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009); see also Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury.").

Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground Three, will be denied.

**GROUND FOUR**

In Ground Four, petitioner asserts a claim of ineffective assistance of appellate counsel in that counsel failed to raise on direct appeal that the trial court improperly refused to allow trial counsel to cross-examine Mr. Mitchell and Sergeant Pruetting concerning facts directly relating

10

to Mr. Mitchell's use of drugs at the time of the crime and with regard to the nature of gunfire Mr. Mitchell alleged to have heard at the time of the crime. Doc. No. 1, pp. 6, 13. Respondent argues that Ground Four is procedurally defaulted because, on appeal of his post-conviction motion, petitioner only alleged that the motion court erred in failing to make adequate findings related to the claim that appellate counsel was ineffective for failing to raise an issue on appeal related to the restriction on cross-examination of Mr. Mitchell about drug use and did not directly address the merits. Doc. No. 9, pp. 30-32. Respondent argues further that even if petitioner's procedural claim could be interpreted as including the merits of Ground Four, petitioner's claim "did not include any claim related to the failure to challenge the limitations on the cross-examination of Mr. Mitchell and Detective Pruetting regarding Mr. Mitchell's prior statements about the gunfire." Id. Therefore, respondent claims that, at a minimum, petitioner procedurally defaulted Ground Four as to the appellate counsel's failure to challenge the trial court's refusal to allow trial counsel to cross-examine Mr. Mitchell and Sergeant Pruetting regarding the nature of gunfire Mr. Mitchell alleged to have heard at the time of the crime by failing to bring the issue up on appeal of his post-conviction motion. Doc. No. 9, p. 32. Petitioner does not address respondent's arguments concerning Ground Four in his reply. Doc. No. 13.

Petitioner procedurally defaulted Grounds Four as to appellate's counsel's failure to challenge the cross-examination of Mr. Mitchell and Sergeant Pruetting regarding gunfire by failing to include the claim in his post-conviction appeal. Sweet, 125 F.3d at 1149 (failure to present claim at any stage of post-conviction proceeding is a procedural default). For this Court to review a procedurally defaulted claim, petitioner must demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice."

11

Coleman, 501 U.S. at 750. Because petitioner has not made such a showing, Ground Four will be denied as to petitioner's claim that appellate counsel was ineffective for failing to challenge the cross-examination of Mr. Mitchell regarding gunfire.

The Missouri Court of Appeals, Western District, held that petitioner's claim that appellate counsel was ineffective for failing to challenge the cross-examination of Mr. Mitchell regarding drug use failed as a matter of law and that, on the merits, appellate counsel was not ineffective, stating that:

> In his first point, Mr. Cochran argues that the motion court erred in denying his Rule 29.15 motion because it did not make conclusions of law on all of the alleged grounds for ineffective assistance of appellate counsel. Specifically, Mr. Cochran contends that Rule 29.15(j) requires us to remand the judgment because the motion court failed to address whether appellate counsel was ineffective for failing to argue that the trial court improperly excluded impeaching evidence of Mr. Mitchell's drug use.
>
> The motion court must provide findings of fact and conclusions of law for all issues properly raised in the post-conviction relief motion. Rule 29.15(j); Rule 24.035(j). Failure to do so requires a reversal and remand unless an exception applies. Ivory v. State, 211 S.W.3d 185, 190-91 (Mo. App. W.D. 2007) (citing Rule 24.035(j)) . . . .
>
> . . . Contrary to the State's interpretation, the motion court's decision does not address appellate counsel's failure to allege an erroneous exclusion. However, we do not remand because the deficiency satisfies an exception: the motion court failed to provide findings and conclusions for an isolated issue upon which the movant would not be entitled to relief as a matter of law. See White v. State, 939 S.W.2d 887, 903 (Mo. banc 1997) (listing common sense exception to Rule 29.15(j)).
>
> To prevail on a claim of ineffective assistance of appellate counsel on this issue, Mr. Cochran had to show that the claim of error was so obvious that a competent attorney would have raised it and was so serious that raising it would have created a reasonable probability that the outcome would have been different. Tisius v. State, 183 S.W.3d 207, 215 (Mo. banc 2006). A defendant has the right to cross-examine witnesses against him, which includes impeaching the witness. State v. Hall, 117 S.W.3d 744, 747 (Mo. App. S.D. 2003). However, impeaching

12

> an eyewitness does not create a reasonable probability that the outcome of the appeal would have been different when another eyewitness's testimony is cumulative. Rowan v. State, 779 S.W.2d 657, 658 (Mo. App. E.D. 1989) (holding movant was not prejudiced by defense counsel's failure to impeach eyewitness with drug and alcohol abuse because her testimony was cumulative of another eyewitness's testimony).
>
> Here, both codefendants testified that Mr. Cochran possessed a gun at the house, the resident was present in the house, and gunshots were fired as they exited the front door. Impeaching Mr. Mitchell with his alleged drug use on the day of the murder would not have affected Mr. William's credibility; thus, including the evidence would not have created a reasonable probability of a different outcome. Because Mr. Cochran was not prejudiced, appellate counsel was not ineffective for failing to raise the issue on appeal. Because Mr. Cochran is not entitled to relief as a matter of law on this issue, remand is unnecessary. Mr. Cochran's first point is denied.

Respondent's Exhibit M, pp. 4-6.

A claim of ineffective assistance of appellate counsel is subject to the same two-part test set forth in Strickland for claims of ineffective assistance of trial counsel. Harris v. Missouri, 960 F.2d 738, 739 (8th Cir.) cert. denied 506 U.S. 921 (1992). Consequently, in order to establish ineffective assistance of appellate counsel, a petitioner "must show that appellate counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense." Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995).

To satisfy the prejudice prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

The Missouri Court of Appeals, Western District, found petitioner was not prejudiced by his appellate counsel's failure to challenge the cross-examination of Mr. Mitchell regarding his alleged drug use, because impeaching Mr. Mitchell would not have affected Mr. Williams' credibility. Respondent's Exhibit M, p. 6. Because the state court's determination was not based upon an

13

"unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground Four will be denied.

**GROUND FIVE**

In Ground Five, petitioner asserts a claim of ineffective assistance of appellate counsel in that counsel was ineffective for "failing to raise these issues on direct appeal and cumulatively with other issues." Doc. No. 1, p. 6. Respondent argues that Ground Five is procedurally defaulted because, other than as noted in Ground Four, no issues relating to any claim that appellate counsel was ineffective were included in petitioner's appeal from the denial of his post-conviction motion. Doc. No. 9, p. 37. Petitioner does not address respondent's argument concerning Ground Five in his reply. Doc. No. 13.

It is unclear as to which claims petitioner is referring in Ground Five. Regardless, petitioner necessarily has procedurally defaulted Ground Five because the only claim of ineffective assistance of appellate counsel included in petitioner's appeal from the denial of his post-conviction motion was directly addressed in Ground Four. Therefore, petitioner procedurally defaulted any other claims of ineffective assistance of appellate counsel by failing to include them in his post-conviction appeal. Sweet, 125 F.3d at 1149 (failure to present claim at any stage of post-conviction proceeding is a procedural default). For this Court to review a procedurally defaulted claim, petitioner must demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Because petitioner has not made such a showing, Ground Five will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this

14

standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

                                            /s/ Howard F. Sachs
                                            HOWARD F. SACHS
                                            UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   November 7, 2011   .